IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MATTHEWS, | ) | Case No. 1:17-cv-1503 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARMAINE BRACY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Kenneth Matthews, an Ohio prisoner serving a prison term of 18 years to life for murder, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Matthews claims that his conviction and sentence in *State v. Matthews*, Cuy. Cty. Ct. Com. Pl. Case No. CR-13-577754-A, violated his constitutional rights.  ECF Doc. 1.  Respondent, Warden Charmaine Bracy[1], filed a return of writ on November 30, 2017.  ECF Doc. 8.  Matthews filed a traverse on February 2, 2018.  ECF Doc. 13.  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Matthews' petition.[2]  Because all of Matthews' claims are procedurally defaulted, noncognizable, and meritless, I recommend that the Court deny Matthews' petition.

---

[1] Charmaine Bracy was warden of Trumbull Correctional Institution of the Ohio Department of Rehabilitation and Correction – the facility at which Matthews is incarcerated – when Matthews commenced this action.  Brandeshawn Harris is now warden of that institution.  https://drc.ohio.gov/tci (last visited July 30, 2019).

[2] Chief Judge Patricia Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 2.

# I. State Court History

## A. State Trial Court, Case No. CR-13-577754-A

On September 5, 2013, a Cuyahoga County, Ohio grand jury indicted Matthews on: one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) ("Count 1"); one count of murder in violation of Ohio Rev. Code 2903.02(B) ("Count 2"); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) ("Count 3"); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) ("Count 4"); and one count of discharge of a firearm on or near prohibited premises in violation of Ohio Rev. Code § 2923.162(A)(3) ("Count 5"). ECF Doc. 8-1 at 5-8. Each count carried one-year and three-year firearm specifications under Ohio Rev. Code §§ 2941.141(A) and 2941.145(A). Specifically, the indictment alleged that "on or about August 30, 2013," Matthews shot and killed Bruce Jernigan with a firearm that he had on his person on a public road or highway. ECF Doc. 8-1 at 5-7; *see also* ECF Doc. 8-1 at 9-10 (bill of particulars). On September 10, 2013, Matthews pleaded not guilty. ECF Doc. 8-1 at 12.

Matthews' trial began on March 24, 2014. ECF Doc. 8-2 at 2. At trial, Tracy O'Hare, a friend of Jernigan, testified that he was on the street with Jernigan and Jerome Sweeney when a car drove up, a female passenger got out and yelled at a person named Brad Hamilton that she was going to "beat his ass," and the driver then reversed back to O'Hare and his friends and told them to get off the block. ECF Doc. 8-2 at 170-74, 181-82, 186. O'Hare testified:

> O'HARE: Bruce said, we ain't got to go nowhere. We live here. By the time got to the front of the car he pulled out a gun, went up and he shot Bruce in the face and Bruce fell over. When I saw the first gunshot I started running. I ran around the corner and I came back around. * * * He fell where he was standing in the same location. * * * Bruce didn't have a gun that day. * * *
>
> PROSECUTOR: Did anyone other than the guy who shot Bruce – you see anyone else with a gun?

O'HARE:  I didn't see anybody else with a gun.

ECF Doc. 8-2 at 171, 175-76.  O'Hare identified Matthews as the individual who shot Jernigan.

ECF Doc. 8-2 at 178-79.  On recross-examination, O'Hare gave the following testimony:

RAMSEY[3]:  After running you came back to the scene?

O'HARE:  Yes.

RAMSEY:  And you saw Mr. Jernigan lying there?

O'HARE:  Yes.

RAMSEY:  After that you went and gave a statement to the police at the homicide department?

O'HARE:  Yes.

RAMSEY:  You rode in the squad car?

O'HARE:  Yes.

RAMSEY:  You rode with other people who were out there that day?

O'HARE:  Yes.

RAMSEY:  With Jerome [Sweeney]?

O'HARE:  Yes.

RAMSEY:  Who else?

O'HARE:  Bruce Jernigan.

RAMSEY:  Brad Hamilton, the grandson?  Who else?

O'HARE:  That was it.

ECF Doc. 8-2 at 193.

---

[3] Matthews' trial counsel.

3

Jerome Sweeney also testified about the incident, recounting much of the same story that O'Hare gave.  ECF Doc. 8-2 at 197-203.  Sweeney also ran after Bruce Jernigan was shot, and when he came back to the scene, he "said, Bruce, if you can hear me move your hand.  He moved for a minute and then it stopped."  ECF Doc. 8-2 at 203.  Sweeney testified that he went to the police station to give a statement the night Jernigan was shot.  ECF Doc. 8-2 at 227.  Sweeney testified:

> RAMSEY:  How did you get down to the police station, the homicide?
>
> SWEENEY:  The police took me.
>
> RAMSEY:  Who you ride with – who else was in the car?
>
> SWEENEY:  Bruce Jernigan.
>
> RAMSEY:  Brad Hamilton was in the car?
>
> SWEENEY:  And Tracy [O'Hare].

ECF Doc. 8-2 at 227-28.  Officer Nicole Corea testified that she transported four witnesses, including three adults and one juvenile (Brad Hamilton).  ECF Doc. 8-3 at 6-7; *see also* ECF Doc. 8-3 at 13 (Hamilton testifying that he was 13).

At the close of the state's case-in-chief, Matthews, through counsel, moved for judgment of acquittal on all five counts.  ECF Doc. 8-3 at 218-19.  The court noted that the state's position on prior calculation for Count 1 "seem[ed] rather tenuous," but denied the motion on that count.  ECF Doc. 8-3 at 222-23.  The court also denied the motion on Counts 2 through 4 but granted acquittal on Count 5.  ECF Doc. 8-3 at 226-27; *see also* ECF Doc. 8-1 at 19.  Matthews renewed his motion for acquittal on Counts 1 through 4 after presenting his case-in-chief, and the court again denied the motion.  ECF Doc. 8-4 at 80-82 (reserving ruling on Count 1 until the jury returned its verdict).

4

The State asked for the court to give lesser-included offense instructions for Counts 1 and 2.  ECF Doc. 8-4 at 51.  Specifically, the state asked the trial court to include a purposeful murder (without prior calculation) instruction for Count 1 and a voluntary manslaughter instruction for Count 2.  ECF Doc. 8-4 at 51.  The court questioned the state regarding the voluntary manslaughter instruction as follows:

> THE COURT:  Then on Count 2, you want voluntary manslaughter?
>
> PROSECUTOR:  Involuntary.
>
> RAMSEY:  I think you said voluntary the first time.
>
> THE COURT:  How would it read?
>
> PROSECUTOR:  Involuntary manslaughter, causing the death of another as a proximate result of committing or attempting to commit a felony.
>
> THE COURT:  You have some concern that firing a weapon at another human being is not a felonious assault, a felony of violence?
>
> PROSECUTOR:  No.  You're right.  I don't have a concern about that.  This was just a lesser included offense and it gives the jury the option.
>
> THE COURT:  I don't see any reason to give them that option.

ECF Doc. 8-4 at 52-53.  Matthews' counsel also joined in the request for the lesser-included offense instructions on Counts 1 and 2.  ECF Doc. 8-4 at 54.  The trial court instructed the jury on the lesser-included murder offense in Count 1 and gave a self-defense/defense-of-others instruction, but the court did not give the lesser-included involuntary manslaughter instruction for Count 2.  ECF Doc. 8-4 at 134-52.

On March 27, 2014, the jury found Matthews guilty of: (1) the murder charge in Count 2; (2) the felonious assault charges in Counts 3 and 4; and (3) the firearms specifications in Counts 2 through 4.  ECF Doc. 8-1 at 13-19.  The jury found Matthews not guilty of the aggravated murder charge and lesser-included offense of murder charge in Count 1.  ECF Doc. 8-1 at 19-23.

5

On March 31, 2014, the trial court determined that Counts 2 through 4 merged and sentenced Matthews to serve a mandatory three-year term of imprisonment on the merged firearm specifications consecutive to an indeterminate prison term of fifteen years to life in prison on the murder charge.  The aggregate sentence was of 18 years to life.  ECF Doc. 8-1 at 26.

### B.    Direct Appeal, Case No. CA-14-101275

On April 22, 2014, Matthews, through appellate counsel, appealed to the Ohio Court of Appeals.  ECF Doc. 8-1 at 28.  Matthews raised the following assignments of error:

1.  The guilty verdicts are against the manifest weight of the evidence.

2.  The sentencing court erred when it failed to inform defendant of post-release control at the sentencing hearing.

3.  The sentencing court committed reversible error when it ordered restitution without sufficient competent evidence in the record.

ECF Doc. 8-1 at 38, 51-57.  In his first assignment of error, Matthews argued that "the jury lost its way" when it did not find that he acted in self-defense when he shot Jernigan.  ECF Doc. 8-1 at 53.  In support of his argument, Matthews asserted that the evidence showed that: (1) Jernigan shook a gun as he approached his car; (2) Matthews heard gun shots and saw another man pull out a gun; and (3) O'Hare's, Sweeney's, and Hamilton's testimony was inconsistent and not credible.  ECF Doc. 8-1 at 53-55.

On January 22, 2015, the Ohio Court of Appeals affirmed Matthews' conviction and sentence but reversed the restitution order.  ECF Doc. 8-1 at 88-96.  The court of appeals held that Matthews' conviction was not against the manifest weight of evidence because the jury, as trier of fact, was free to rely on O'Hare's and Sweeney's testimony that Jernigan was unarmed, and that Matthews exited the truck with his gun in hand and shot Jernigan at close range.  ECF Doc. 8-1 at 92-93.  Further, the court of appeals noted that there was no credible evidence that

Jernigan was armed, no gun was found at the scene, and another witness testified that Matthews had previously said that "she needed to clean up her streets or that he was going to do it for her." ECF Doc. 8-1 at 93.  The court of appeals remanded the case for further consideration of the restitution issue, and the trial court entered a new restitution order on July 27, 2015.  ECF Doc. 8-1 at 96, 98.

### C.      Untimely Appeal to the Ohio Supreme Court, Case No. 2015-1382

On August 21, 2015, Matthews filed an untimely *pro se* notice of appeal and motion to file a delayed appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 99-104.  In his motion for delayed appeal, Matthews argued that he "was never made aware of the time limit for filing a timely appeal[, and h]e has no knowledge or understanding of the rules of court."  ECF Doc. 8-1 at 102.  Matthews did not identify any of the grounds he wished to raise before the Ohio Supreme Court.  ECF Doc. 8-1 at 99-104.  On October 28, 2015, the Ohio Supreme Court denied Matthews' motion for a delayed appeal and dismissed the case.  ECF Doc. 8-1 at 115.

### D.      Delayed App. R. 26(B) Application to Reopen

On June 1, 2016, Matthews filed an untimely *pro se* App. R. 26(B) application to reopen his direct appeal.  ECF Doc. 8-1 at 116-31, 228.  In his application, Matthews argued that his appellate counsel was constitutionally ineffective for failing to argue that: "(1) the trial court erred by failing to provide the jury lesser included offense instructions on Matthews'[] Count Two of Murder; [and] (2) Matthews received ineffective assistance of trial counsel when counsel failed to object to the trial court's refusal to provide the lesser included offense instruction on Count Two."  ECF Doc. 8-1 at 122.  Matthews asserted that he had good cause for failing to timely file his App. R. 26(B) application, because appellate counsel had not informed him of the time to file a App. R. 26(B) application and he had difficulty obtaining his trial transcripts.  ECF

7

Doc. 8-1 at 119-22.  On August 30, 2016, the Ohio Court of Appeals denied as untimely

Matthews' application to reopen his direct appeal.  ECF Doc. 8-1 at 142-46.

On October 3, 2016, Matthews *pro se* appealed the denial of his App. R. 26(B)

application to the Ohio Supreme Court.  ECF Doc. 8-1 at 148-49.  In his memorandum in support

of jurisdiction, Matthews raised the following propositions of law:

    I.    The Defendant-Appellant was denied a fair trial, and his Due Process
protections under the United States and Ohio Constitutions were violated,
when the trial court denied the State's request to provide the jury with a lesser
included offense instruction of involuntary manslaughter on his Count 2 of
murder.

    II.    The Defendant-Appellant received ineffective assistance of counsel, in
violation of his Due Process protections under the United States and Ohio
Constitutions, when his appellate counsel failed to bring up on appeal the trial
court's denial of the State's request to provide the jury with a lesser included
offense instruction of involuntary manslaughter on his Count 2 of murder.

    III.    The Defendant-Appellant was denied his Due Process protections under the
United States and Ohio Constitutions when the Eighth District Court of
Appeals denied his Application for Delayed Reopening pursuant to App. R.
26(B).

ECF Doc. 8-1 at 151, 155-62.  On December 14, 2016, the Ohio Supreme Court declined

jurisdiction.  ECF Doc. 8-1 at 171.  Matthews did not appeal to the United States Supreme Court.

**E.    Delayed App. R. 26(A) Motion for Reconsideration**

On December 8, 2016, Matthews filed an untimely *pro se* App. R. 26(A) motion for

reconsideration of the denial of his direct appeal.  ECF Doc. 8-1 at 172.  As in his untimely App.

R. 26(B) application, Matthews asserted that his App. R. 26(A) motion was untimely because he

had difficulty obtaining his transcripts.  ECF Doc. 8-1 at 194-95.  The Ohio Court of Appeals

denied Matthews' motion on February 8, 2017.  ECF Doc. 8-1 at 197.

On March 14, 2017, Matthews *pro se* appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at 198-99.  His memorandum in support of jurisdiction raised the following propositions of law:

> I.   Was sufficient evidence produced to the jury to find Defendant-Appellant guilty of the felonious assault and felony murder of Bruce Jernigan when it was established that Bruce Jernigan was not the actual person shot and killed by Defendant-Appellant?
>
> II.  Did the manifest weight of evidence presented at trial establish that the Defendant-Appellant was acting in self-defense when he shot the victim?

ECF Doc. 8-1 at 201, 205-13.  On July 5, 2017, the Ohio Supreme Court declined jurisdiction.  ECF Doc. 8-1 at 217.

## II.    Federal Habeas Petition

On July 17, 2017, Matthews filed his petition for writ of habeas corpus.  ECF Doc. 1.

Matthews' petition raises three grounds for relief:

> **GROUND ONE:**  There was insufficient evidence to convict Matthews for murder under [Ohio Rev. Code § 2903.02(B)], which violated his Due Process protections under the *Fourteenth Amendment* to the U.S. Constitution.
>
> **Supporting Facts:**  Matthews['] indictment specifically charged that he caused the death of Bruce Jernigan.  The victim in this case, who was shot, was pronounced dead at the scene.  However, two of the State's key witnesses, who were eyewitnesses at the scene of the alleged murder, testified that Bruce Jernigan rode in a police cruiser with them down to the police station.  This was implicitly verified by the testimony of Officer Nicole Corea.  The manifest weight of the evidence also supported the defense's claim that Matthews was acting in self-defense.
>
> **GROUND TWO:**  Matthews was denied a fair trial when the trial court denied the State's request to provide the jury with a lesser included offense instruction of involuntary manslaughter on Matthews'[] Count 2 of murder, which violated his Due Process protections under the *Fourteenth Amendment* to the U.S. Constitution.
>
> **Supporting Facts:**  Matthews was indicted in Count 1 for aggravated murder, and in Count 2 for murder.  Near the conclusion of the trial the State requested that the jury be provided with lesser included offense instructions of murder for

9

Count 1 and involuntary manslaughter for Count 2.  The trial court granted the instruction for Count 1 but denied it for Count 2.  The jury subsequently found Matthews not guilty of either aggravated murder or murder for Count 1, but guilty of murder for Count 2.

**GROUND THREE:**  Matthews received ineffective assistance of appellate counsel when counsel failed to raise as a claim in Matthews'[] direct appeal the trial court's denial of the State's request for a lesser included offense instruction of involuntary manslaughter on the Count 2 charge of murder, in violation of his rights under the *Sixth* and *Fourteenth Amendments* to the U.S. Constitution.

**Supporting Facts:**  After trial Matthews was appointed counsel for his direct appeal.  Matthews'[] appellate counsel failed to raise a claim in the direct appeal that the trial court had erred by denying the State's request for a lesser included offense instruction of involuntary manslaughter on the Count 2 charge of murder.

ECF Doc. 1 at 4-6.

## III.     Applicable Habeas Corpus Legal Framework

### A.     AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas corpus petitions filed after April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n.7, and "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  When the claims presented in a habeas corpus petition have been presented to and decided on the merits by the state courts, a federal court may not grant relief unless the petitioner proves that the state court decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

10

28 U.S.C. § 2254(d).  Habeas review is limited to the record that was before the state court when

it adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (2011)

(holding that "evidence introduced in federal court has no bearing on § 2254(d)(1) review");

A decision is unreasonable only if it "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any reasonable possibility for

fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The reviewing court

may not "treat[] the reasonableness question as a test of its confidence in the result it would

reach under *de novo* review, and "even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal

court believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold.").  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the

correctness of that decision."  *Harrington*, 526 U.S. at 88 (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).  This standard is intentionally "difficult to meet," because "habeas corpus

is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

ordinary error correction through appeal."  *Harrington*, 526 U.S. at 102-03 (quoting *Jackson v.*

*Virginia*, 443 U.S. 307, 322 n.5 (1979)).

"Clearly established federal law" for purposes of § 2254(d)(1) "is the governing legal

principle or principles set forth by the United States Supreme Court at the time the state court

renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also White v. Woodall*,

572 U.S. 415, 420 (2014) (holding that clearly established federal law includes "only the

holdings," and not the dicta, of Supreme Court decisions).  Thus, to show that a decision was

11

contrary to clearly established federal law, a habeas petitioner must show that the state court: (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The state court decision need only reach a result and apply reasoning consistent with Supreme Court precedent, and need not refer to, or even demonstrate awareness of, relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

To show that a state court decision is an "unreasonable determination of the facts" under § 2254(d)(2), a petitioner has the burden of presenting clear and convincing evidence that the state court made a clear factual error. *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013). This is because AEDPA affords state court factual determinations a "presumption of correctness." 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

**B.    Exhaustion and Procedural Default**

Before a federal court can review a state prisoner's habeas petition, AEDPA requires that the state prisoner exhaust all available state remedies. 28 U.S.C. 2254(b), (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). To exhaust available remedies, the state prisoner must give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("[T]he highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims."). The exhaustion requirement "refers only to

12

remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability."). It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). If the highest court in a state has not reviewed the petitioner's federal constitutional claims, then federal courts may not review them either, except under strictly limited circumstances.

Separate from exhaustion requirement, the doctrine of procedural default bars federal court review of a habeas petitioner's federal constitutional claim when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available. *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court looks to the last explained state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

The Sixth Circuit has directed courts to apply a four-part test when the state argues that a state prisoner's claim is defaulted due to the prisoner's failure to observe a state procedural rule. *See Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v.* Smith, 785 F.2d 135, 138 (6th Cir. 1986)). First, the court determines whether the state prisoner failed to comply with an applicable state procedural rule. *Id.* Second, the "court must determine whether the state courts actually enforced the state procedural sanction – that is whether the state courts actually based their decisions on the procedural rule." *Id.* Third, the court decides whether the state

13

procedural rule is an "adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim." *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991) (explaining that the application of an "independent" state law ground must not rely in any part on federal law); *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) (explaining that an "adequate" state procedural rule must be "firmly established and regularly followed" by state courts at the time it was applied).  Finally, the court must determine whether the petitioner "can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice." *Williams*, 260 F.3d at 693.

When the state asserts that the prisoner failed to "fairly present" the federal constitutional claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

A petitioner's procedural default can be excused if the petitioner can demonstrate cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered.  *Coleman*,

14

U.S. at 750.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.*  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*  In assessing prejudice, the reviewing court should assume that the petitioner has stated a meritorious constitutional claim and proceed to discern whether the assumed constitutional error actually prejudiced the petitioner.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  There is no prejudice when the petitioner does not show a reasonable probability of a different verdict had the alleged constitutional error not occurred.  *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### C.    Cognizability

A claim that alleges only violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*,

497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Further, a petitioner may not convert a claim asserting state law error into a constitutional claim,

merely by alleging that the failure to follow a state rule violated his due process rights. *Rivera v.*

*Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous

observance of state procedural prescriptions, but "the fundamental elements of fairness in a

criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long

recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal

of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v.*

*Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68); *see also Allen v. Morris*, 845

F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an

additional state appellate court reviewing state courts' decisions on state law or procedure).

Nevertheless, state court rulings on issues of state law may rise to the level of due process

violations if they ""offend[] some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental."" *Seymour v. Walker*, 224 F.3d 542, 552 (6th

Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Such rulings must be "so

egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496,

512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised when

"the action complained of . . . violates those 'fundamental conceptions of justice which lie at the

base of our civil and political institutions,' . . . and which define 'the community's sense of fair

play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations

omitted). Thus, courts "have defined the category of infractions that violate 'fundamental

fairness' very narrowly." *Id.*

16

## IV.    Relevant Ohio Law

### A.    Time Limits for Direct Appeals

An Ohio criminal defendant has 30 days from the date his conviction and sentence become final to file a timely direct appeal.  Ohio R. App. P. 4(A).  On direct appeal, the appellant may only present claims based on issues captured in the trial court record.  *See State v. Johnson*, No. 97698, 2012-Ohio-3812 at ¶28 (Ohio Ct. App., Aug. 23, 2012) ("On direct appeal we are limited to a review of the trial record.").  In non-capital cases, an Ohio criminal defendant must generally file a notice of appeal to the Ohio Supreme Court and memorandum in support of jurisdiction within 45 days after the Ohio Court of Appeals rules on the initial appeal.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1).  If the defendant fails to file a timely appeal from a court of appeals decision affirming a felony conviction, the defendant may seek leave to file a delayed appeal to the Ohio Supreme Court.  Ohio S. Ct. Prac. R. 7.01(A)(4).  If the defendant does not file a timely appeal to the Ohio Supreme Court, and the Court does not grant a motion for a delayed appeal, the Ohio Supreme Court is divested of jurisdiction over the defendant's appeal.  Ohio S. Ct. Prac. R. 7.01(A)(1)(b) ("Except as provided in divisions (A)(2), (3), (4), (5), and (6) of this rule . . . the appellant's failure to file within this time period shall divest the Supreme Court of jurisdiction to hear the appeal.").

### B.    Time Limits for Post-Conviction Motions

Ohio post-conviction procedure is governed by Ohio Rev. Code § 2953.21.  An Ohio criminal defendant must file his post-conviction motion within 365 days after: (1) the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction; or (2) the date on which the time to file a timely direct appeal expired, if the defendant did not file a timely direct appeal.  Ohio Rev. Code § 2953.21(A)(2).  When a trial

17

court dismisses a timely post-conviction petition, the court must "make and file findings of fact and conclusions of law with respect to such dismissal." Ohio Rev. Code § 2953.21(D).  In contrast, "a trial court need not issue findings of fact and conclusions of law when it dismisses an untimely petition." *State ex rel. Kimbrough v. Greene*, 781 N.E.2d 155, 156 (Ohio 2002).  When a court dismisses a post-conviction petition as untimely, the dismissal order is immediately final and appealable. *State ex rel. Williams v. Krichbaum*, No. 07-MA-61, 2007-Ohio-3037 at ¶10 (Ohio Ct. App. June 15, 2007).

An unsuccessful post-conviction petitioner must initiate an appeal within 30 days of judgment, or within 30 days of the resolution of a post-judgment motion to file findings of fact and conclusions of law.  Ohio R. App. P. 4(A)(1), (B)(2)(D).  A court of appeals has no authority to grant a petitioner's motion for leave to file a delayed appeal in a post-conviction context. *State v. Harvey*, 428 N.E.2d 437, 438 (Ohio Ct. App. 1980).

## V.    The Facts

Analysis of Matthews' petition begins with the facts recited in the Ohio Court of Appeals opinion on direct appeal.  These factual findings are presumed correct unless Matthews rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

> {¶ 2}   On the night of August 30, 2013, Kenneth Matthews fatally shot Bruce Jernigan.  The evidence and testimony presented at trial revealed that the altercation took place sometime around 11:30 p.m., shortly after Jernigan got off his shift at a local grocery store.  Jernigan and two friends, Tracy O'Hare and Jerome Sweeney, had walked to Sweeney's home located just around the block from the store.  The three men were standing on the lawn outside of Sweeney's apartment building when a pickup truck turned down the street, stopped a few houses away from them, and then proceeded to back up toward them.  Matthews and his daughter were riding in the truck.  At this point, Matthews yelled from the truck for the three men to get off the block. Jernigan refused, and told Matthews that they did not have to go anywhere because they lived there.  Matthews then

proceeded to exit the truck, approach Jernigan and shoot Jernigan in the face.

* * *

{¶ 7}   Here, O'Hare and Sweeney, two eye witnesses who were with Jernigan when he was shot, testified at trial that Matthews exited his truck with a weapon in hand, walked up to Jernigan, and shot him at close range.  The witnesses testified that Jernigan was unarmed, and had done nothing to provoke Matthews, aside from simply refusing to get off the block.  Although Matthews maintains that he was acting in self-defense, no credible evidence was ever presented that established that Jernigan was armed that evening.  No gun was found at the scene of the crime and witnesses testified that they did not see Jernigan in possession of a weapon.  Further, a woman who was a 38-year resident of the neighborhood testified that Matthews had recently told her two days before the shooting that she needed to clean up her streets or that he was going to do it for her.

{¶ 8}   Therefore, after careful consideration of the evidence in the record, we cannot say that the jury lost its way and committed a manifest injustice by finding Matthews guilty of murder.

ECF Doc. 8-1 at 90-93.

## VI.    Analysis

### A.    Request to Strike Return of Writ

In his traverse, Matthews asks the Court to strike Warden Bracy's return of writ.  ECF Doc. 13 at 4.  Matthews asserts that the Court said "no further extensions [would] be granted" after it granted Warden Bracy's first motion to extend the deadline to file a return of writ, but that it "backtracked on its own order by granting" a second motion to extend the deadline to file a return of writ.  ECF Doc. 13 at 4-5; *see also* CM/ECF for N.D. Ohio Case No. 1:17-cv-1503, Non-Document Orders on September 8, 2017, and November 29, 2017.  Matthews notes that the Court's second order acknowledged the no-further-extensions language and provided that "no further extensions [would] be granted, barring extraordinary circumstances."  ECF Doc. 13 at 5; *see also* CM/ECF for N.D. Ohio Case No. 1:17-cv-1503, Non-Document Order on November

19

29, 2017.  He contends that because the first order did not contain such conditional language, the Court should not have entertained Warden Bracy's second motion to extend.  ECF Doc. 13 at 5. Thus, Matthews argues that Warden Bracy's return of writ was untimely and should be disregarded.  ECF Doc. 13 at 5.

If Matthews wished to object to the order granting Warden Bracy's second motion to extend the deadline to file a return of writ, he should have done so within 14 days after he received a copy of that order.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to [a nondispositive order by a magistrate judge] within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").  Because he failed to do so, any objection to the order granting Warden Bracy's second motion for an extension is untimely.  *Id.*  Further, the decision to grant an extension – even after warning that no further extensions would be granted – was well-within the court's discretion to manage its docket.  *See Dunning v. War Mem. Hosp.*, 534 F. App'x 326, 331 (6th Cir. 2013) (citing *United States v. Van Dyke*, 605 F.2d 220, 227 (6th Cir. 1979), and *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 593 (7th Cir. 2012)); *cf. Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) (concluding that a district court did not abuse its discretion in denying a fifth motion for extension when the court had already "granted four extensions of time[,] one of which was granted after a warning that no further extensions would be granted"); *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978) ("Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'").  Thus, I recommend that the Court deny Matthews' request to strike the return of writ.

**B.**     **Procedural Default**

Matthews' habeas claims are procedurally defaulted, because he failed to "fairly present" them at each level of the state courts' ordinary review process.  Although Matthews raised a manifest-weight claim on direct appeal to the Ohio Court of Appeals, that claim was insufficient to present the legal basis of the sufficiency-of-the-evidence claim he raises in Ground One. *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368.  Further, Matthews never raised any of the claims he wishes to now raise before the Ohio Supreme Court, and Ohio law no longer permits him to raise his claims in a direct or collateral proceeding.  *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at 661; Ohio S. Ct. Prac. R. 7.01(A)(1), (4); Ohio Rev. Code § 2953.21; ECF Doc. 8-1 at 99-104, 115.  Although Matthews attempted to present his sufficiency-of-the-evidence claim to the Ohio Supreme Court on appeal from the denial of his untimely App. R. 26(A) motion for reconsideration, the Ohio Supreme Court's decision not to disturb the denial of his motion precluded him from presenting the legal factual basis for his claim.  ECF Doc. 8-1 at 172, 194-217.  Similarly, the Ohio Supreme Court's decision not to disturb the denial of Matthews' App. R. 26(B) application precluded him from presenting the legal and factual basis for his jury-instructions and ineffective-assistance-of-appellate-counsel claims.  *O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806; *McMeans*, 228 F.3d at 681; *Koontz*, 731 F.2d at 368; ECF Doc. 8-1 at 116-31, 148-71.  Thus, because Matthews failed to fairly present his sufficiency-of-the-evidence, jury-instructions, and ineffective-assistance-of-appellate-counsel claims to the Ohio Supreme Court, and because state law no longer allows him to raise those claims, they are procedurally defaulted.  *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

Matthews asserts that he had good cause for failing to raise his claims, because his difficulty obtaining his trial transcripts prevented him from filing in the Ohio Court of Appeals a timely motion for reconsideration and a timely application to reopen.  ECF Doc. 13 at 10-12, 17, 23.  Specifically, Matthews asserts that counsel did not give him transcripts when he requested them in March or August 2015, and he was only able to obtain them in April 2016 after the court granted his December 2015 motion for transcripts at the court's expense.  ECF Doc. 13 at 10-11.

Matthews cannot overcome his procedural default.  Matthews' argument – that he could not timely file a motion for reconsideration or application to reopen to the Ohio Court of Appeals – does not in any way explain why he failed to raise these issues in a timely appeal to the Ohio Supreme Court.  Here, Matthews has not made any attempt to explain why he waited over a month to seek transcripts from counsel and over 11 months to seek transcripts from the court.  ECF Doc. 8-1 at 88-96, ECF Doc. 13 at 10-12, 17, 23.  He also has not explained why, after receiving his transcripts, he waited nearly four months to file his application to reopen and over eight months to file his motion for reconsideration.  ECF Doc. 8-1 at 116-31, 172, 228; ECF Doc. 13 at 10-12, 17, 23.  Further, a petitioner's difficulty obtaining transcripts is insufficient to show good cause for failing to timely raise his claims on direct appeal or in an application to reopen – especially when, as in this case, the petitioner filed his direct appeal to the Ohio Supreme Court well-before he actually received his transcripts.  *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's mistaken belief that he required a complete copy of his trial transcripts prior to filing a notice of appeal with the Ohio Supreme Court does not establish cause to excuse his procedural default); *Abreu v. Huffman*, 27 F. App'x 500, 505 (6th Cir. 2001) (noting that Ohio Courts of Appeals uniformly held that the inability to obtain transcripts was not a sufficient basis for untimely filing an application to reopen); ECF Doc. 8-1 at 99-104; ECF

Doc. 13 at 10-12, 17, 23.  Moreover, even if Matthews' good-cause argument could be construed to assert that appellate counsel was ineffective for failing to present his sufficiency-of-the-evidence and jury-instructions claims on appeal to the Ohio Court of Appeals, that argument would fail because, as discussed below, those claims were meritless.  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (counsel is not ineffective for failing to raise a meritless claim); *Jones v. Barnes*, 463 U.S. 745 (754) (1983 (the Constitution does not require counsel "to raise every 'colorable' claim").  Thus, Matthews has not carried his burden to show that he had good cause for failing to raise his claims before the Ohio Supreme Court.  *Coleman*, 501 U.S. 750; *Moore*, 74 F.3d at 691-92; *Frady*, 456 U.S. at 17-72; *Mason*, 320 F.3d at 629.

Matthews also has not shown that his murder conviction was a fundamental miscarriage of justice.  Matthews has not produced or pointed to any new evidence, not already presented at trial, indicating that he was actually innocent.  *Schlup*, 513 U.S. at 324; *Bousley*, 523 U.S. at 623. Here, Matthews' claim that he could not have killed Jernigan because the transcript shows that Jernigan rode with O'Hare and Sweeney in the police cruiser is based on testimony presented at trial, not new evidence.  *Schlup*, 513 U.S. at 324; ECF Doc. 1 at 4-6; ECF Doc. 13 at 9-17. Moreover, as discussed more fully below, the trial evidence shows that Matthews shot Jernigan with the intent to kill him, and Jernigan died at the scene.  ECF Doc. 8-2 at 140, 171, 174-75, 185-87, 190-93, 198, 201-206, 221, 238; ECF Doc. 8-3 at 2-3, 23-24, 26, 142-49, 158-61.  Any indication in the trial transcript that Jernigan was alive and rode with O'Hare and Sweeney to the police station appears to be a recording error in which Jernigan's name was substituted for Brad Hamilton's name.  ECF Doc. 8-2 at 186, 218, 228-29; ECF Doc. 8-3 at 16, 20-21, 27-28, 162-63. Further, Matthews' jury-instruction and ineffective-assistance-of-counsel arguments do not in any way indicate that Matthews was factually innocent of shooting Jernigan, thereby causing his

death.  *Bousley*, 523 U.S. at 623; *see* ECF Doc. 1 at 4-6; ECF Doc. 13 at 17-24.  Further, these claims do not establish Matthews, though responsible for killing Jernigan, was entitled to acquittal because he acted in self-defense.  Thus, Matthews has not carried his burden to show that his convictions was a fundamental miscarriage of justice because he was actually innocent. *Coleman*, 501 U.S at 750; *Lundgren*, 440 F.3d at 764.

I recommend that this Court dismiss Matthews' claims as procedurally defaulted and deny his habeas petition.  Nevertheless, because the Court may look past a procedural default if a claim is more easily denied on the merits, I address the merits of Matthews' claims below.

### C.    Ground One

In his Ground One claim, Matthews argues that there was insufficient evidence to support his murder conviction.  ECF Doc. 1 at 4; ECF Doc. 13 at 12-17.  Specifically, Matthews contends that the state did not present sufficient evidence to prove that he shot and killed Jernigan, because the trial transcript indicates that O'Hare and Sweeney testified that Jernigan rode with them in the police cruiser after he shot and killed Jernigan.  ECF Doc. 1 at 4; ECF Doc. 13 at 13-17.

"The *Fourteenth Amendment's* Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt." *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a criminal defendant alleges that the evidence adduced at trial was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  On habeas review, this inquiry is further filtered through 28 U.S.C. § 2254(d)'s deferential standard. *Davis v. Lafler*, 658 F.3d 525, 531-

24

35 (6th Cir. 2011) (*en banc*) (explaining that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473.  Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state appellate court reasonably concluded that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  The sufficiency of the evidence determination is based on all of the evidence, even evidence erroneously admitted.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).

Ohio's murder statute provides, in relevant part, that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree."  Ohio Rev. Code § 2903.02(B).  When an individual commits an underlying felonious assault and the victim dies, the individual is guilty of murder under Ohio Rev. Code § 2903.02(B).  *State v. Miller*, 775 N.E.2d 498, 504 (Ohio 2002) (holding that a man was guilty of felony murder under § 2903.02(B) when he fired a gun at his wife at close range and she later died from her injuries).

Matthews' Ground One claim is meritless.  Matthews has not shown that the state courts could not have reasonably concluded that the trial evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Matthews committed the essential elements of murder under Ohio Rev. Code § 2903.02(B).  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).  Here, the prosecution presented witness testimony showing that: (1) O'Hare and Sweeney watched Matthews shoot Jernigan at close range and saw Jernigan fall to the ground and die at the scene; (2) Odeh

Wahden (Jernigan's employer), Brad Hamilton, Officer Alex Gumucio, Officer Nicole Corea, and Officer Rhonda Gray saw Jernigan lying on the ground, dead when they arrived at the scene; and (3) Dr. Cheryl Niblo's autopsy revealed that Jernigan's gunshot wounds were so severe that he would have died "quickly . . . within minutes." ECF Doc. 8-2 at 140, 171, 174-75, 185-87, 190-93, 198, 201-206, 221, 238; ECF Doc. 8-3 at 2-3, 23-24, 26, 142-49, 158-61. In fact, Matthews shot Jernigan at such close range that trace amounts of gunshot residue were found on Jernigan's cadaver. *See* ECF Doc. 8-3 at 54.

Further, to the extent that the transcript indicates Jernigan was alive and rode in the police car to give statements to the homicide detectives, this appears to be a recording error in which Jernigan's name was substituted for Brad Hamilton. Here, it is clear that when the transcript recorded O'Hare saying that he rode with "Bruce Jernigan," the prosecutor understood that O'Hare said "Brad Hamilton." This same error appears elsewhere in the record, where the transcript indicates that Matthews' daughter had an altercation with "Bruce Jernigan," but later indicates that "Bruce Jernigan" did not say anything to Matthews' daughter at all. *See* ECF Doc. 8-2 at 186, 218, 228-29; ECF Doc. 8-3 at 16, 20-21, 27-28. A closer look at the record shows that O'Hare and Hamilton both indicated that Matthews' daughter had an altercation with Hamilton, not Jernigan. *See* ECF Doc. 8-2 at 186, 218, 228-29; ECF Doc. 8-3 at 16, 20-21, 27-28. Moreover, Officer Gray indicated that O'Hare, Sweeney, and Hamilton – not Jernigan – went to the police station to give statements to the homicide detectives. ECF Doc. 8-3 at 162-63. Even if this court were to assume that the transcript accurately reflects the trial testimony, the jury was nevertheless permitted to believe the evidence that Jernigan died at the scene after Matthews shot him and give little weight to any testimony indicating that Jernigan was alive after Matthews shot and killed him. *See State v. Jackson*, No. 93235, 2010-Ohio-3716 ¶16 (Ohio

App. Ct. 2010) ("A jury, as finder of fact, may believe all, part, or none of a witness's testimony."); *accord Beavers v. United States*, 3 F.2d 860, 863 (6th Cir. 1925) ("[E]ven in case of an impeached witness the jury might still believe all, part, or none of his testimony.").  Thus, Matthews has not carried his burden to show that the state appellate court could not have reasonably concluded that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt.  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).

Accordingly, if the Court chooses to look past Matthews' procedural default, I recommend that Matthews' Ground One claim be denied for lack of merit.

### D.     Ground Two

In his Ground Two claim, Matthews asserts that he was denied a fair trial, in violation of his Due Process rights under the *Fourteenth Amendment*, when the court denied the state's request for a lesser-included offense instruction.  ECF Doc. 1 at 5; ECF Doc. 13 at 17-23. Specifically, Matthews argues that the trial court should have instructed the jury regarding the elements of manslaughter as a lesser alternative to the murder charge in Count 2.  ECF Doc. 1 at 5; ECF Doc. 13 at 17-23.  Matthews asserts that his claim is cognizable under 28 U.S.C. § 2254(d)(2) because the trial court's decision was based on an "unreasonable determination of the facts."  ECF Doc. 13 at 17.

#### 1.     Cognizability

Matthews' Ground Two claim is not cognizable.  Matthews' claim – that the trial court violated his rights by failing to give a lesser-included offense instruction – does not assert a violation of federal constitutional rights because "the Constitution does not require a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th

Cir. 2001); *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  Further, Matthews cannot convert his

claim into a cognizable constitutional claim merely by alleging that the failure to give a lesser-

included offense instruction violated his due process rights.  *Rivera*, 556 U.S. at 158; *Engle*, 456

U.S. at 121 n.21.  Although Matthews attempts to get past this by alleging that the refusal to give

a lesser-included offense instruction deprived him of a fundamentally fair trial, that argument

fails because lesser-included offense instructions in non-capital cases do not implicate

fundamental conceptions of justice or the community's sense of fair play and decency.  *Dowling*,

493 U.S. at 352; *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *see also Bagby v. Sowders*,

894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*) ("the failure to instruct on lesser included

offenses in noncapital cases . . . is not an error of such character and magnitude to be cognizable

in federal habeas corpus review.").

Accordingly, I recommend that the Court deny Matthews' Ground Two claim as

noncognizable.

### 2.       Merits

Even if this Court were to conclude that Matthews' Ground Two claim is cognizable, it is

nevertheless meritless.  In *McMullan v. Booker* – the case Warden Bracy relies upon to argue

that Matthews' Ground Two claim is noncognizable – the Sixth Circuit addressed a habeas

petitioner's claim that a Michigan trial court violated his Due Process rights by refusing to

instruct the jury on involuntary manslaughter as a lesser-included offense to first-degree and

second-degree murder.  761 F.3d 662, 666-68 (6th Cir. 2014).  Rather than dismissing the claim

as noncognizable, the Court addressed the claim on the merits.  *Id.*  The Court held that the

district court properly denied relief: (1) under 28 U.S.C. § 2254(d)(1) because the U.S. Supreme

Court "ha[d] never held that the Due Process Clause requires instructing the jury on a lesser

included offense in a non-capital offense"; and (2) under 28 U.S.C. § 2254(d)(2) because the state courts reasonably determined that an involuntary manslaughter instruction was not necessary.  *Id.*  Specifically, the Court explained that the state courts reasonably determined that "malice" – the *mens rea* required under the Michigan murder statute – could be inferred when the petitioner had held a gun a foot away from the victim's chest and discharged it.  *Id.* at 667-68 (noting that "malice" included "an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death").

  Matthews' claim that the trial court violated his Due Process rights by refusing to instruct the jury on involuntary manslaughter as a lesser-included offense to the murder charge in Count 2 is meritless.  Because the U.S. Supreme Court has never held that the refusal to give a lesser-included offense instruction in a non-capital case violates the Due Process clause, Matthews cannot show that the trial court's decision violated clearly established federal law under 28 U.S.C. § 2254(d)(1).  *McMullen*, 761 F.3d at 666-67; *Lockyer*, 538 U.S. at 71-72; *White*, 572 U.S. at 420; *Williams*, 529 U.S. at 412-13; *Early*, 537 U.S. at 8.  Further, Matthews cannot show that the trial court's decision not to instruct the jury on involuntary manslaughter was the result of an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2).  Here, the state court reasonably determined that an involuntary manslaughter instruction was unnecessary when: (1) the evidence showed that Matthews aimed a gun at Jernigan's face and discharged it; (2) Jernigan died as a result of Matthews shooting him; and (3) those facts were sufficient to establish an underlying violent offense, *i.e.* felonious assault.  ECF Doc. 8-1 at 90-93; ECF Doc. 8-2 at 171, 175-76; ECF Doc. 8-4 at 52-53; Ohio Rev. Code § 2903.02(B); *Miller*, 775 N.E.2d at 504; *see also McMullen*, 761 F.3d at 667-68.  Further, the trial court explained that "a purpose to cause death" could be inferred from Matthews' actions, and that "[t]here was no evidence this

was an accidental firing." ECF Doc. 8-4 at 132; *see State v. Thomas*, 533 N.E.2d 286, 289 (Ohio 1988) (holding that a court needs to give a lesser-included offense instruction "only if the evidence adduced at trial would support it). Thus, even if we would have reached a different decision in the first instance, this court may not second-guess the trial court's reasonable decision not to give an involuntary manslaughter instruction. *Wood*, 558 U.S. at 301.

Accordingly, if the Court reaches the merits of Matthews' Ground Two claim, I recommend that the claim be denied for lack of merit.

### E.    Ground Three

In his Ground Three claim, Matthews asserts that his appellate counsel was constitutionally ineffective for failing to raise on direct appeal a claim challenging the trial court's refusal to give an involuntary manslaughter instruction for Count 2. ECF Doc. 1 at 6; ECF Doc. 13 at 23-24.

The right to effective assistance of counsel extends to the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 392 (1985). In *Strickland v. Washington*, the U.S. Supreme Court established that a petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the *Sixth Amendment*; and (2) counsel's deficient performance prejudiced the defendant. 466 U.S. 668, 688 (1984). This standard applies to claims that appellate counsel was constitutionally ineffective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). To act as counsel guaranteed by the *Sixth Amendment*, appellate counsel need only exercise reasonable professional judgment, and is not obligated to raise every "colorable" claim on appeal. *Jones*, 463 U.S. at 754; *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have

30

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").  Further, counsel cannot be ineffective for failing to raise a meritless claim.  *Shaneberger*, 615 F.3d at 452.  For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Even if this Court were to look past Matthews' procedural default, his Ground Three claim is meritless.  Matthews cannot show that appellate counsel was constitutionally ineffective for failing to challenge the trial court's refusal to give an involuntary manslaughter instruction to the jury because he cannot show that appellate counsel's performance was deficient or prejudicial.  *Strickland*, 466 U.S. at 688, 690, 694.  Matthews cannot show that appellate counsel's performance was deficient because his underlying claim – that the trial court erred by refusing to give an involuntary manslaughter instruction – was meritless and counsel was not required to raise a meritless issue.  *Id.*; *Shaneberger*, 615 F.3d at 452; *Jones*, 463 U.S. at 754.  As I discussed in evaluating the merits of Matthews' Ground Two claim, Matthews has not shown that the state courts could not have reasonably concluded that the facts did not support giving an involuntary manslaughter instruction.  *Harrington*, 526 U.S. at 102-03; *Jackson*, 443 U.S. at 322 n.5; Ohio Rev. Code § 2903.02(B); *Miller*, 775 N.E.2d at 504; *Thomas*, 533 N.E.2d at 289; ECF Doc. 8-4 at 52-53, 132.  Further, Matthews has not shown that appellate counsel's failure to challenge the jury instructions on direct appeal prejudiced him, as it is unlikely the state appellate court would have reversed the trial court on that issue when the facts demonstrated that: (1) Matthews aimed a gun at Jernigan's face; (2) Matthews discharged the gun; and (3) Jernigan died as a result.  *Strickland*, 466 U.S. at 694; *see also* Ohio Rev. Code § 2903.02(B); *Miller*, 775 N.E.2d at 504; *Thomas*, 533 N.E.2d at 289; ECF Doc. 8-1 at 90-93; ECF Doc. 8-2 at 171, 175-

31

76.  Thus, because Matthews has not shown that appellate counsel's performance was deficient or prejudicial, he cannot show that appellate counsel rendered constitutionally ineffective assistance.

Accordingly, if the Court decides to look past Matthews' procedural default of his Ground Three claim, I recommend that the claim be denied as meritless.

## VII.  Summary of Findings and Recommendation

Matthews' claims all fail as a matter of law for the following summarized reasons:

**Ground One:**  Procedural default and lack of merit.

**Ground Two:**  Procedural default, no cognizable federal constitutional issue raised, and, if deemed to raise a federal constitutional issue, lack of merit.

**Ground Three:**  Procedural default and lack of merit.

Further, I recommend the court deny Matthews' request to strike the return of writ filed by Warden Bracy.

## VIII.  Certificate of Appealability

### D.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not

require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### E.  Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts my recommendations, Matthews will not be able to show that the Court's rulings on his procedurally defaulted, meritless, and noncognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

Dated: September 3, 2019

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).